## AMERICAN EXPRESS COMPANY *v.* MICHIGAN.

ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 220. Argued November 9, 1899.—Decided April 16, 1900.

A proceeding for a mandamus is " a suit" within the meaning of that term as employed in Rev. Stat. § 709.

A Federal question, which was decided in the court below, is involved in this suit.

The statute of June 13, 1848, c. 448, " to meet war expenditures, and for other purposes," does not forbid an express company, upon which is imposed the duty of paying a tax upon express matter, from requiring the shipper to furnish the stamp, or the means of paying for it.

THE Attorney General of the State of Michigan on the relation of George F. Moore and others commenced proceedings in the Circuit Court of Wayne County, Michigan, against the American Express Company. The company was described as " a joint stock association organized and existing under the laws of the State of New York and having its principal business office located in the city of New York, in said State." It was averred that the company complied with the requirements of certain statutes of the State of Michigan and had obtained the necessary certificate authorizing it to carry on an express business in that State, and in order to conduct such business had a large number of agents and offices in the State. The petition then alleged that on June 13, 1898, the Congress of the United States passed an act commonly designated as the War Revenue Act, by which it was made the duty of express companies on receiving a package for carriage to issue a receipt for such package, and providing that the receipt thus issued should bear a one cent stamp. After referring to the text of the act of Congress on the above subject, it was alleged that by the provisions of the law in question the primary and absolute duty was imposed upon express companies to provide the receipt and to affix and cancel the one cent stamp as required by law. The following averments were then made:

" That by reason of a desire of the respondent (the express company) to avoid the payment of the stamp tax, so called, and to impose such obligation on the shipper, the respondent

herein refuses to accept any goods for transportation unless such shipper attaches the stamp to the said bill of lading, manifest or other evidence of receipt and forwarding for each shipment, or. furnishes the money or means for that purpose to the said company, and that the said company thereby not only avoids its duty under said act of Congress to pay and bear its proportion of the revenues to meet war expenditures as provided by said act, but violates its duty as a common carrier to receive, accept and deliver such goods, wares and merchandise so offered and tendered to it for that purpose."

A number of instances were specified where it was averred the express company on the tender to it of packages for transportation as a common carrier had refused to receive the same and to issue receipts therefor "unless a stamp of the value of one cent was paid or provided" by the shipper. It was charged that the conduct of the express company was in violation of the obligations imposed upon it by the act of Congress in question, and constituted a refusal to perform its duty as a common carrier. The prayer was for a mandamus commanding the company to receive packages for transportation by express and issue a receipt with stamp duly canceled thereon, without seeking to compel shippers who might tender packages for carriage either to pay for the one cent stamp or to provide the means for so doing.

The answer of the express company admitted that it required persons who tendered packages for carriage, by express, either to pay or provide the means for defraying the cost of the one cent stamp, but denied that its conduct in so doing was a violation of the act of Congress by which the one cent tax on express receipts was imposed. On the contrary, it was averred that the act of Congress, when. properly construed, although imposing the absolute duty to issue a receipt for every package as therein provided, left the question of who should pay for the stamp free for adjustment between the shipper and the express company. By the act of Congress, it was asserted, the express company had, therefore, the right or privilege of insisting that those who offered packages to be carried by express should either furnish the one cent stamp or provide the means of pay-

ing for it.  It was, moreover, alleged that the company had in effect but increased its rates on each shipment by adding to the previous rates the sum of the stamp tax.  And it was averred that this increase the company was not forbidden to make, by the act of Congress imposing the one cent stamp tax, and that the rate as increased by exacting that the one cent stamp should be furnished or that its value be paid for by the shipper was just and reasonable, and was not in conflict with the act of Congress.  The answer was in effect demurred to as not stating a defence.  The case was submitted for decision on petition and answer.  The court ordered the mandamus to issue substantially as prayed for.  The cause was then removed by writ of *certiorari* to the Supreme Court of the State of Michigan, where the judgment of the trial court was affirmed.  77 Northwestern Rep. 317.  By an allowance of a writ of error the judgment of the Supreme Court of the State is before us for review.

*Mr. Lewis Cass Ledyard* for plaintiff in error.

*Mr. C. E. Warner* for defendants in error.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

We will first dispose of the claim that this court is without jurisdiction to review the judgment, and that hence the writ of error should be dismissed.   The contention is based upon the following : 1, that the proceeding below, being for a mandamus, was not a "suit" within the meaning of that term as employed in section 709 of the Revised Statutes ; and 2, because no Federal question is involved and no such question was below decided.

The first proposition is not tenable.  *McPherson* v. *Blacker,* 146 U. S. 1, 24 ; *Hartman* v. *Greenough,* 102 U. S. 672.

The second is likewise without merit.  From the summary of the pleadings just made, in the statement of the case, it is apparent that the issue between the parties involved an assertion on the one side that the act of Congress imposed on the express company the absolute duty of furnishing the receipt, of

affixing the stamp thereto and canceling the same. The argument that it was hence a violation of the duty, imposed upon the express company by the act of Congress, for the company either to demand the stamp or the amount thereof from the shipper, and that it was also a violation of the act of Congress for the express company to increase its rates to the extent necessary to accomplish the result of securing the reimbursement of the amount of the one cent stamp tax. On the other hand, the defence of the express company was that under the act of Congress it had the right, privilege or immunity (which it specially set up and claimed) of demanding the payment of the one cent or of increasing its rates to the extent that the tax imposed a burden upon it, provided only the rates charged were just and reasonable. The question thus presented was in substance the only one decided by the Supreme Court of the State. In stating the issues arising for its decision the court said : " The main question in the case relates to the construction to be placed upon the act in question," that is, the act of Congress. After a review of the provisions of the statute it was decided that under it the express company could not in any event or by any means transfer the burden of the tax in question. Considering the right of the express company to increase its rates to the extent necessary to secure the payment of the tax by the shipper, the court said :

" It is contended, however, that the company has the right to make new regulations and establish new rates to meet all this burden. It is contended that the effect of this is to throw the burden upon the shipper. It is apparent upon the face of this proceeding that the very purpose of this change in the regulations and the increase of rates is to avoid the payment of the tax and thus cast upon the shipper the burden which the act of Congress puts upon the company. This is but an evasion and a subterfuge to avoid the terms of the act."

The foregoing reasoning was supplemented by comment upon the fact that the increase of rate resulting from the charge of one cent on each package was made without reference to the distance each package was to be carried. We do not, however, understand the remarks on this subject as implying that the

court below decided that the rate as increased by the one cent
was intrinsically unreasonable without regard to the provisions
of the act of Congress, but only that the rate as so increased
was unreasonable, because an attempt on the part of the express
company to shift the burden of the tax imposed upon it by the
act of Congress, and hence was by legal inference forbidden by
that act.   No other view is possible when the state of the record
is considered.   As we have seen, the controversy was submitted
on petition and answer.   It is nowhere, however, averred in the
petition that the rates, with or without the addition of the tax,
were intrinsically unjust and unreasonable; while in the an-
swer, following an averment as to the enactment of the stamp
act and its resulting effects, it was averred as follows :

"Respondent therefore decided to raise and did raise its rates
of transportation to an amount reasonable and just, and only
necessary to meet the change of conditions made by said act,
and save itself from great loss of revenue and profits as com-
pared with its earnings before the passage of said act.

"And respondent submits and asserts that it had the full
and perfect right to make such change in its method of trans-
acting its business and in its former rates for transportation."

As, therefore, upon the submission of the cause upon the
pleadings, there was no controversy as to the intrinsic reason-
ableness of the increased rates, it follows that if we were to
hold that the court below had decided that the increased rates
were unreasonable in themselves, we would conclude that the
court below had so held, although it was substantially admitted
on the record by both parties that the increase of rates was
just and reasonable, if not forbidden by the act of Congress.
But such action cannot be attributed consistently with reason
and justice.   This being the state of the case, the Federal ques-
tion presented is wholly unaffected by what was said by the
court on the subject of the right of the corporation to increase
its charges by the amount of the tax.   As there was no alle-
gation that the rates existing prior to the imposition of the one
cent stamp tax were unreasonable, it would follow that the
rates which were otherwise reasonable were decided not to be
so solely because there was added to the charge for each pack-

age the exact amount of the increased cost for transporting the package, occasioned as to each package, by the specific imposition on each by the act of Congress of the one cent stamp tax. But to cause rates which were conceded to be reasonable to become unreasonable because alone of such increased charge the assumption must be made that the act of Congress not only imposed the burden of the tax solely on the express company, but also forbade its shifting the same by any and every method. And no other view is, in reason, possible when the averments of the answer are borne in mind. It hence results that the Federal question, although changed in form of statement, remains in substance the same. In the changed form it is as follows: Did the act of Congress deprive the express company of the right to shift the burden of the tax by increasing the rate by the exact amount distinctly and separately imposed by the act upon each shipment, and hence render the charge unreasonable, which would be in itself reasonable, except for the hypothesis that the act of Congress renders all efforts to shift the tax illegal.

It follows that the case as made by the pleadings, and which was decided below, involved a right, privilege or immunity under the act of Congress, which was specially set up and claimed by the express company, to contract with the shippers for the payment of the tax provided by the act of Congress, or to increase its rate, within the limit of reasonableness, to the extent of such tax, which right, privilege or immunity was denied and held to be without merit by the court below. There is therefore jurisdiction. Rev. Stat. § 709.

The controversy which is contained in the merits of the cause is resolvable into three questions: First. Does the act of Congress impose upon the express company the duty of making a receipt for a package tendered to it, and does it also forbid the express company from requiring the shipper to furnish the stamp to be affixed to the receipt, or of supplying the means of paying for the same? Second. If the act of Congress does impose such duty on the express company and does inhibit it from requiring that the shipper furnish the stamp or the means of paying for it, does the act further forbid the express com-

pany from seeking to cast the burden on the shipper by an increase of rates? Third. And, as a corollary of the second proposition, does an increase of rate by an express company which is otherwise just and reasonable become unlawful, under the act of Congress, because such increase is made with the purpose of shifting the burden of the one cent tax from its own shoulders to that of the shipper?

The first proposition is unnecessary to be considered, since even although it be conceded that the act of Congress imposes on the express company the duty of paying the one cent stamp tax, this admission would not be at all decisive of the cause unless also it be ascertained under the second proposition, that the act of Congress also forbids the express company from shifting the burden of the tax by means of an increase of rates. And no necessity for passing on the first proposition arises from the mere fact that the decision of the second proposition requires a consideration of the provisions of the statute which it would be necessary to take into view if the first proposition was under consideration.

It is also to be observed that the second and third propositions which involve, the one the right to shift the burden of the tax by exacting that the one cent be provided and the other the power to increase rates within the limits of the requirement that the charges as increased be reasonable, both depend upon the same considerations.

Indeed, the question into which all the issues are ultimately resolvable is whether the right exists to shift the burden, of course ever circumscribed by the duty of not exceeding reasonable rates. If it does not, that is, upon the hypothesis that it not only can be, but is forbidden, then it must result that all methods adopted to attain the prohibited result are void. On the contrary, if the right to seek to shift the burden obtains then the substantial result of what is done becomes the criterion, and the mere fact that the motive, announced, for a reasonable increase of rates, is declared to be a shifting of the burden, cannot prevent the exercise of the lawful right.

The special provisions of the law upon which the case turns are the first paragraph of section 6 and the express and freight

clause of Schedule A, forming a part of section 25. 30 Stat. 451, 459.

The paragraph of section 6 referred to is as follows:

"SEC. 6. That on and after the first day of July, eighteen hundred and ninety-eight, there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or cer- tificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this act, or for or in respect of the vellum, parch- ment, or paper upon which such instruments, matters, or things, or any of them, shall be written or printed by any person or persons, or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule."

Now, there is nothing in the provisions just quoted which, by the widest conjecture, can be construed as expressly forbid- ding the person upon whom the taxes are cast from shifting the same by contract or by any other lawful means. An infer- ence to the contrary arises from the fact that the duty is im- posed in the alternative on "any person or persons, or party, who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued."

The language of the express and freight clause of Schedule A is as follows:

"EXPRESS AND FREIGHT: It shall be the duty of every rail- road or steamboat company, carrier, express company, or cor- poration, or person whose occupation is to act as such, to issue to the shipper or consignor or his agent, or person from whom any goods are accepted for transportation, a bill of lading, manifest, or other evidence of receipt and forwarding for each shipment received for carriage and transportation, whether in bulk or in boxes, bales, packages, bundles, or not so inclosed or included; and there shall be duly attached and cancelled, as is in this act provided, to each of said bills of lading, manifests, or other memorandum, and to each duplicate thereof, a stamp of the value of one cent: *Provided*, That but one bill of lading

shall be required on bundles or packages of newspapers when inclosed in one general bundle at the time of shipment. Any failure to issue such bill of lading, manifest, or other memorandum, as herein provided, shall subject such railroad or steamboat company, carrier, express company, or corporation or person to a penalty of fifty dollars for each offence, and no such bill of lading, manifest, or other memorandum shall be used in evidence unless it shall be duly stamped as aforesaid."

The argument is that as it is made the duty of the express company to make and issue " a bill of lading, manifest or other evidence of receipt and forwarding for each shipment, . . . and there shall be duly attached and cancelled, as in this act provided, to each of said bills of lading, manifests or other memorandum, and to each duplicate thereof, a stamp of the value of one cent;" therefore, the obligation is imposed absolutely on the express company, not only to make and furnish the receipt, but to issue it with the stamp duly cancelled. But as we have said though the correctness of the claim be *arguendo* taken for granted, such concession does not suffice to dispose of the essential issues. They are that by the statute the express company is forbidden from shifting the burden by an increase of rates, although such increased rates be in themselves reasonable. As no express provisions sustaining the propositions are found in the law, they must rest solely upon the general assumption that because it is concluded that the law has cast upon the express company the duty of paying the one cent stamp tax, there is hence to be implied a prohibition restraining the express company from shifting the burden by means of an increase of rates within the limits of what is reasonable. In other words, the contention comes to this, that the act in question is not alone a law levying taxes and providing the means for collecting them, but is moreover a statute determining that the burden must irrevocably continue to be upon the one on whom it is primarily placed. The result follows that all contracts or acts shifting the burden, and which would be otherwise valid, become void. To add by implication such a provision to a tax law would be contrary to its intent, and be in conflict with the general object which a law levying taxes

is naturally presumed to effectuate. Indeed, it seems almost impossible to suppose that a purpose of such a character could have been contemplated, as the widest conjecture would not be adequate to foreshadow the far reaching consequences which would ensue from it. To declare upon what person or property all taxes must primarily fall is a usual purpose of a law levying taxes. To say when and how the ultimate burden of a tax shall be distributed among all the members of society would necessitate taking into view every possible contract which can be made, and would compel the weighing of the final influence of every conceivable dealing between man and man. A tax rests upon real estate. Can it be said that by the law imposing such a tax it was intended to prevent the owner of real property from taking into consideration the amount of a tax thereon, in determining the rent which is to be exacted by him? A tax is imposed upon stock in trade. Must it be held that the purpose of such a law is to regulate the price at which the goods shall be sold, and restrain the merchant therefore from distributing the sum of the tax in the price charged for his merchandise? As the means by which the burdens of taxes may be shifted are as multiform and as various as is the power to contract itself, it follows that the argument relied on if adopted would control almost every conceivable form of contract and render them void if they had the result stated. Thus, the price of all property, the result of all production, the sum of all wages, would be controlled irrevocably by a law levying taxes, if such a law forbade a shifting of the burden of the tax and avoided all acts which brought about that result. It cannot be doubted that to adopt, by implication, the view pressed upon us, would be to virtually destroy all freedom of contract, and in its final analyses would deny the existence of all rights of property. And this becomes more especially demonstrable when the nature of a stamp tax is taken into consideration. A stamp duty is embraced within the purview of those taxes which are denominated indirect, and one of the natural characteristics of which is, although it may not be essential, that they are susceptible of being shifted from the person upon whom in the first instance the duty of

payment is laid.   We are thus invoked by construction to add
to the statute a provision forbidding all attempts to shift the
burden of the stamp tax when the nature of the indirect taxa-
tion which the statute creates suggests a contrary inference.
And, in this connection, although we have already called at-
tention to the consequences which must generally result from
the application of the doctrine contended for, it will not be in-
appropriate to refer to certain of the provisions of the act now
under consideration, which more aptly serve to make particu-
larly manifest the consequences indicated.   Thus, perfumery,
patent medicines and many other articles are required by the
statute to be stamped by the owner before sale.   The logical
result of the doctrine referred to would be that the price of the
articles so made amenable to a stamp tax could not be increased,
so as to shift the cost of the stamp upon the consumer.   Yet
it is apparent that such a construction of the statute would be
both unnatural and strained.

The argument is not strengthened by the contention that as
the law has imposed the stamp tax on the carrier, public policy
forbids that the carrier should be allowed to escape his share
of the public burdens by shifting the tax to others who are
presumed to have discharged their due share of taxes.   This
argument of public policy if applied to a carrier would be
equally applicable to all the other stamp taxes which the law
imposes.   Nor is the fact that the express company is a com-
mon carrier and engaged in a business in which the public has
an interest and which is subject to regulation, of importance
in determining the correctness of the proposition relied upon.
The mere fact that the stamp duty is imposed upon a common
carrier does not divest such tax of one of its usual character-
istics or justly imply that the carrier is in consequence of the
law deprived of its lawful right to fix reasonable rates.   Un-
questionably a carrier is subject to the requirement of reason-
able rates, but as we have seen, no question of the intrinsic
unreasonableness of the rates charged arises on this record or
is at issue in this cause.   As previously pointed out, to decide
as a matter of law that rates are essentially unreasonable from
the mere fact that their enforcement will operate to shift the

burden of a stamp tax would be in effect but to hold that the act of Congress by the mere fact of imposing a stamp tax forbids all attempts to shift it, and consequently that the carrier is deprived by the law of the right to fix rates, even although the limit of reasonable rates be not transcended. This reduces the contention back to the unsound proposition which we have already examined and disposed of.

There is a special provision of the law which grants affirmatively the right to add the tax to the cost of an instrument, and hence it is urged this express authority in one case is pregnant with the denial of a right to do so in other cases. The clause in the statute referred to is found in a paragraph of Schedule A, whereby a stamp tax is imposed on " Bill of exchange, (inland,) draft, certificate of deposit drawing interest or order for the payment of any sum of money. . . ."

The second and concluding sentence of the paragraph reads as follows:

" And from and after the first day of July, eighteen hundred and ninety-eight, the provisions of this paragraph shall apply as well to original domestic money orders issued by the government of the United States, and the price of such money orders shall be increased by a sum equal to the value of the stamps herein provided for."

Without the provision last quoted, authority would have been wanting to increase the cost of a government money order, by adding the sum of the tax imposed upon such order to the charge therefor, because the charge for a money order was fixed by law. This at once explains the necessity for conferring authority to add to the cost of the money order the amount of the stamp tax. Instead, therefore, of giving rise to the suggestion that the right to shift the burden of other stamp taxes was taken away in all cases where there was liberty and power to contract, the provision relied on is persuasive to the contrary. For, clearly, the express authority conferred to do that which the law otherwise forbade in consequence of the want of power in a government official, cannot with reason be held to imply a prohibition against doing that which was not forbidden by law. The argument, in effect, amounts to this and nothing more;

that, because it was imperatively necessary to confer a power upon a government officer which, owing to statutory restriction, he otherwise would not have possessed, therefore the legal deduction must be drawn that freedom of contract as between those who had the right to contract was destroyed.

But it is asserted that the War Revenue Act of 1898 was modelled upon the act of July 1, 1862, providing internal revenue tax, 12 Stat. 432, and as the act of 1862 plainly manifested the purpose of Congress to impose a stamp tax on express companies and to forbid them from shifting the burden arising from such tax, therefore the act under consideration should be construed as having the same effect. The fact that the present act was modelled upon the act of 1862 is undoubted, (see section 94 of the act of 1862, 12 Stat. 475,) but the text of the act of 1862 expressed no restraint upon the power of shifting by contract or by an increase of rates within the limit of the requirement that they should be reasonable. It follows that testing the present act by that of 1862 throws no additional light upon the controversy. The claim that the act of 1862 contained a prohibition against shifting is thus inferred. By the act of 1862 a stated per centum of tax was imposed upon the gross receipts of railroads, steamboats and ferryboats, as well as toll bridges. (Section 80, 12 Stat. 468.) After providing for the levy and collection of the taxes in question, the following proviso was applied to the section by which the taxes just referred to were levied : " *Provided*, That all such persons, companies and corporations shall have the right to add the duty or tax imposed hereby to their rates of fare whenever their liability thereto may commence, any limitations which may exist by law or by agreement with any person or company which may have paid or be liable to pay such fare to the contrary notwithstanding." ·

This express authority to shift the burden of the tax on gross receipts, it is claimed under the rule of *inclusio unius*, justifies the implication that the power to shift did not exist as to taxes imposed by other portions of the act of 1862, to which the proviso did not apply.

In passing it is worthy of remark that by the act of March 3,

1863, 12 Stat. 713, it was enacted (sec. 10) that on and after the 1st day of April, 1863, "any person or persons, firms, companies or corporations, carrying on an express business shall, in lieu of the tax and stamp duties imposed by existing laws, be subject to pay a duty of two per centum on the gross amount of all the receipts of such express business, and shall be subject to the same provisions, rules, and penalties as are prescribed in section 80 of the act to which this is an amendment." In other words, when in 1863 the stamp tax relating to express companies was abrogated and a tax on gross receipts substituted therefor, the express companies were authorized to add the result of the gross receipt tax to their charges, any law or contract to the contrary. But the implication deduced from the authority conferred by the statute of 1862 to shift the burden of the tax on gross receipts levied on railroads, etc., by an increase of charges, is unsound. Indeed, the proviso in question, when properly construed, gives rise to an inference contrary to the one sought to be drawn from it.

The tax imposed under the section in question was not in form a stamp tax, but on gross receipts, and the proviso referred to may, from abundance of caution, have been inserted to leave no room for the assumption that a tax thereby imposed was a direct tax and not subject to be shifted. Besides, the whole context manifests the purpose not to declare a rule in violation of public policy as to particular corporations, but to enable such corporations to possess the power to shift the tax by increasing its charges, even although contracts or restrictions previously imposed might otherwise prevent.

The right to shift by an increase of rates within what is reasonable can only be held to be illegal upon the assumption that public policy forbids it. If such be taken to have been the principle of public policy embodied in the act of 1862, that act must be held to have repudiated, by the proviso to section 80, the very public policy by the light of which it is contended the act must be interpreted. If there was a rule of public policy giving rise to the assumption that stamp taxes relating to express companies could not be shifted, it becomes impossible in reason to understand why, when the taxation was changed

by the act of 1863 from a stamp tax to one on gross receipts, the express companies should have been brought within the proviso to section 80 of the act of 1862. Clearly, if the rule of public policy which is relied on existed it would have been as cogently applicable to the one form of tax as to the other.

In the case of the *State Freight Tax*, 15 Wall. 232, the court was called upon to notice a state law conferring a right to charge over by an increase of rates the sum of tax imposed. In considering the subject (pp. 273, 274) it was said:

"The provision is as follows: 'Corporations whose lines of improvement are used by others for the transportation of freight, and whose only earnings arise from tolls charged for such use, are authorized to add the tax hereby imposed to said tolls, and to collect the same therewith.' Evidently this contemplates a liability for the tax beyond that of the company required to pay into the treasury, and it authorizes the burden to be laid upon the freight carried, in exemption of the corporation owning the roadway. It carries the tax over and beyond the carrier to the thing carried. Improvement companies, not themselves authorized to act as carriers, but having only power to construct and maintain roadways, charging tolls for the use thereof, are generally limited by their charters in the rates of toll they are allowed to charge. Hence the right to increase the tolls to the extent of the tax was given them in order that the tax might come from the freight transported, and not from the treasury of the companies. It required no such grant to companies which not only own their roadway, but have the right to transport thereon. Though the tolls they may exact are limited, their charges for carriage are not. They can, therefore, add the tax to the charge for transportation without further authority."

Other contentions as to the construction of the act based upon various other provisions have been pressed with great earnestness, but we deem it unnecessary to consider them, as the foregoing considerations dispose of the case. It follows that the court below erred in holding that by the act of Congress the express company was forbidden from shifting the burden of the stamp tax by an increase of rates which were not in themselves unreasonable,

*The judgment below rendered must, therefore, be reversed, and the case be remanded for further proceedings not inconsistent with this opinion, and it is so ordered.*

MR. JUSTICE HARLAN and MR. JUSTICE McKENNA dissenting.

We are of opinion that the act of Congress imposed upon the Express Company the duty not only of affixing at its own expence the required stamp upon any receipt issued by it to a shipper, but of cancelling such stamp — thus giving to the shipper a receipt that could, when necessary, be used as evidence. Whether the company, having issued a receipt duly stamped and cancelled, could increase its charges against the shipper for the purpose, whether avowed or not, of meeting this additional expense, is not, in our opinion, a Federal question, and upon that point this court need not express an opinion.