[S. F. No. 2136.   In Bank.—February 17, 1902.]

THE PEOPLE, Respondent, v. WELLS, FARGO & COMPANY, Appellant.

WAR TAX ON EXPRESS COMPANY—RIGHT TO COLLECT FROM SHIPPER—SUBSTANTIAL RESULT—INCREASE OF CHARGE—CRITERION.—An express company to which has been tendered its regular charge, previously made, for transportation of a package may refuse to transport it without payment by the shipper of the burden of the one-cent war tax, where the imposition of such burden upon the shipper is in effect a reasonable increase in the regular rate charged for transportation to all shippers. The substantial result, and not the mode or intention of shifting the burden of the tax, is the criterion of the lawfulness of the charge.

ID.—CASE APPLIED.—The case of *American Express Company* v. *Michigan*, 177 U. S. 404, is applicable to the facts of this case, and is conclusive of the law applicable thereto. [Henshaw, J., Van Dyke, J., and Garoutte, J., dissenting.]

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The complaint, besides alleging the unlawful exaction of the internal-revenue tax of one cent from the plaintiff, alleged that "the defendant is, and ever since the twelfth day of July, 1898, has been, unlawfully and without right asking and de-

manding of all persons within this state who do and transact any express business with defendant in this state, the payment by such person of the internal-revenue tax." The answer expressly admitted this averment, with the exception of denying that its action was unlawful or without right. The answer also claimed that it was the duty of the shipper, and not of the express company, to pay the tax.

Further facts are stated in the opinion of the court.

E. S. Pillsbury, and Alfred Sutro, for Appellant.

Tirey L. Ford, Attorney-General, and George A. Sturtevant and William M. Abbott, Deputies Attorney-General, for Respondent.

THE COURT.—*Mandamus* brought by the state to compel the defendant corporation, an express company, to accept, carry, and deliver a certain package offered to it, for transportation, the offer being accompanied by a tender of twenty-five cents. The defendant refused to accept the package for transportation without further payment by plaintiff of one cent, or of a one-cent documentary internal-revenue stamp, as provided by the United States statute of June 13, 1898, known as the "War Revenue Act." These facts were admitted by defendant's answer, and plaintiff moved for and obtained judgment upon the pleadings. From that judgment the defendant appeals.

On April 6th last, a majority of the court handed down an opinion affirming the judgment of the court below; but upon defendant's petition a rehearing was granted. Upon the former hearing it was conceded that unless the facts of this case could be distinguished from the facts in the case of *American Express Co.* v. *Michigan,* 177 U. S. 404, the judgment should be reversed; and that is the question now before us for reconsideration.

The supposed distinction between this case and the case above cited was thus stated: "In the Michigan case the express company shifted the burden by a reasonable change in its rate. In the present case the question before the court may thus be put: May an express company, to which has admittedly been tendered its regular charge for the transporta-

tion of a package, refuse to accept and transport that package upon its arbitrary demand that something more than the regular charge shall be paid?''

It may at once be conceded that the said stamp tax is imposed by the act of Congress upon the express company. It issues the receipt or bill of lading upon which the stamp is required to be placed, and must cancel the stamp. The act is silent as to any duty connected therewith imposed upon the shipper, or by whom the cost of the stamp shall be borne. The first and principal question for determination, therefore, is whether the express company can shift the burden of the tax from its shoulders to those of the shipper; and this question was unequivocally decided in said case by the supreme court of the United States. It was there said (p. 410) : ''It is also to be observed that the second and third propositions, which involve the one to shift the burden of the tax by exacting that the one cent be provided, and the other the power to increase rates within the limits of the requirement that the charges as increased be reasonable, *both depend upon the same considerations.* Indeed, the question into which all the issues are ultimately resolvable is whether the right exists to shift the burden, of course ever circumscribed by the duty of not exceeding reasonable rates. If it does not,—that is, upon the hypothesis that it not only can be, but is, forbidden,—then it must result that all methods adopted to attain the prohibited result are void. On the contrary, if the right to seek to shift the burden obtains, then the substantial result of what is done becomes the criterion, and the mere fact that the motive announced, for a reasonable increase of rates, is declared to be a shifting of the burden cannot prevent the exercise of the lawful right.''

But two modes of shifting the burden of this tax have been suggested, and both affect the shipper and carrier in the same manner and to precisely the same extent. One is to require the shipper (taking this case as an example) to pay twenty-five cents and to furnish a one-cent stamp, or to pay twenty-six cents, the carrier to furnish the stamp, and the other to pay twenty-six cents; and as said in the foregoing quotation, ''if the right to shift the burden obtains, then the *substantial result* of what is done becomes *the criterion.''* In the two examples stated the result is the same, and was accomplished in practi-

cally the same manner and at an equal cost to the shippers. But on the facts as stated by Mr. Justice White in *American Express Co.* v. *Michigan,* 177 U. S. 404, that case and the case at bar are identical. In the complaint in the state court in that case the people alleged that the express company, in order to avoid the payment of the stamp tax, refused to accept any goods for transportation unless the shipper attached the stamp to the bill of lading or receipt, or furnished the money or means for that purpose to the said company; and the answer alleged that the express company had "the right or privilege of insisting that those who offered packages to be carried by express should either furnish the one-cent stamp or provide the means of paying for it. It was, moreover, alleged that the company *had in effect* but increased its rates on each shipment by adding to the previous rates the sum of the stamp tax." The effect is the same here, and was accomplished in precisely the same manner. We see no ground upon which the two cases can be distinguished, and on the authority of *American Express Co.* v. *Michigan,* 177 U. S. 404, the judgment is reversed, with directions to dismiss the action.

BEATTY, C. J., concurring.—Upon the main question involved in this case we are bound by the decisions of the supreme court of the United States. In *American Express Co.* v. *Michigan,* 117 U. S. 404, the facts were in every essential respect the same as those presented by this record. There the express company after the passage of the War Revenue Act, and in view of the duty thereby imposed upon all carriers of its class to issue a receipt bearing a one-cent stamp for every package received for transportation, had simply adopted a regulation requiring its customers to furnish or pay for the stamp in addition to the regular charge previously exacted for the same service. Precisely the same thing is shown to have been done by this defendant, and the error in our former opinion was caused by our failure to consider one of the allegations of the petitioner from which it clearly appears that the demand made upon him that he should furnish or pay for the stamp in addition to the regular charge, was not an arbitrary exaction in his individual case, but was merely the application to him of a rule universally applied to all shippers. This allegation leaves no

room for the assumption that the demand upon this petitioner for the one-cent stamp was one to be enforced or waived in individual cases, as the defendant might arbitrarily choose, but shows, on the contrary, that here, as in the Michigan case, the express company simply sought to shift the burden of the tax to the shipper by advancing its rates. This the supreme court of the United States plainly decides that the carrier may do, provided always the new rate is not unreasonable. As to this point—the reasonableness of the new rate—there is some difference between this case and the Michigan case. In that case the answer alleged, and the motion for judgment on the pleadings admitted, that the new rate was reasonable, while here it is not shown whether the new rate is reasonable or not. As to this point, however, we are, I suppose, governed by the general rule that the burden of proof is upon the party seeking relief, and the petitioner, not having shown that the rate demanded for the carriage was unreasonable, must fail.

I concur in the judgment of reversal.

HENSHAW, J., dissenting.—I dissent and adhere to the views expressed in the opinion handed down upon the first hearing of this cause. (64 Pac. Rep. 702.) It was there said, and it is undoubtedly true, that if no essential difference exists between the facts of the case before this court and those of the Michigan case carried before the supreme court of the United States, and reported in 177 U. S. 404, the decision of the latter case will be absolutely determinative of the question and binding upon this court. This court had before it then only so much of the record of the Michigan case as was published with the opinion in the volume of the reports above cited. A rehearing was granted to the end that petitioner and appellant might show, as they urged, that an identity and parallelism of facts existed between this case and the Michigan case. Upon this question appellant may be correct. It would have been an extremely simple method of disposing of the question to have presented to this court, in connection with the supreme court's decision, a full record of the Michigan case. Upon consideration of that record all doubt would have been forever laid at rest. This, however, was not done. Upon this second hearing we have no other nor better light for our guidance than that which led us in the earlier determination,

merely the reported decision in the one hundred and seventy-seventh volume of the United States Reports. I am unable to perceive in the statement and discussion by the supreme court of the United States in the Michigan case the parallelism and identity of facts with the case at bar, which the present prevailing opinion declares to exist. In the former opinion handed down in this case it was said: "In the Michigan case the express company shifted the burden by a reasonable change in its rate. In the present case the question before the court may thus be put: May an express company, to which has admittedly been tendered its regular charge for the transportation of a package, refuse to accept and transport that package upon its arbitrary demand that something more than the regular charge shall be paid? Here it is true that the exaction is small, amounting to only one cent; but if the principle is good, it would apply equally well if the amount were larger. Being an arbitrary demand of the company,—that is to say, a demand which it could waive at pleasure,—it would mean, if the principle contended for by appellant be upheld, that one shipper might receive the services of the express company upon the payment of the regular charge, while others for the same service would be compelled to pay varying sums, arbitrarily exacted, in addition to the regular charge. So stated,— and we think the statement a fair one,—it will not need discussion to show that the principle is erroneous, and that this may not be done. Each and every shipper is entitled to the services of the company upon the payment of the regular charge for the same service."

With the light before us I still think that this shows a substantial distinction between the two cases, because of which the judgment in the case at bar should be affirmed.

Van Dyke, J., and Garoutte, J., concurred in the dissenting opinion.

The following is the opinion above referred to, rendered in Bank on the 6th of April, 1901:—

HENSHAW, J.—This action is mandate, brought by the state to compel the defendant corporation, an express company, to accept, carry, and deliver a certain package offered to it for transportation, the offer being accompanied by a

tender of the full amount of defendant's regular charges for
such services.   Defendant refused to accept the package with-
out further payment by plaintiff of one cent, or of a one-cent
documentary internal-revenue stamp, as provided by the Unit-
ed States statute of June 13, 1898, commonly designated the
War Revenue Act.   These facts were admitted by defendant's
answer, and plaintiff moved and obtained judgment upon the
pleadings.   From that judgment defendant appeals.

At the time when the appeal came before this court for
argument, many questions, which had received learned and
elaborate attention from counsel in their printed briefs, had
been disposed of by a decision of the supreme court of the
United States in *American Express Co.* v. *Michigan,* 177 U. S.
404.   So far as the law of that case is applicable to the one
before us, it is of the highest authority and absolutely de-
terminative.   It invites, therefore, careful consideration.   The
first distinction to be noted between this case and the one
which came under decision before the supreme court of the
United States, is this:   In the former the pleadings admit that
the regular charge of the express company was tendered by
the shipper and refused by the company, which exacted one
cent, or a one-cent internal-revenue stamp, in addition to its
regular charge.   In the latter case the company increased its
rates by adding to them the amount of the war-revenue tax.
In dealing with the question of the increased rate, the supreme
court of the United States held that the state tribunal had not
decided that the rate, otherwise reasonable, had become un-
reasonable solely because increased by the amount of the war
tax, and its further discussion of the law is based upon this
holding, that, in effect, the state court had decided that the
increased rate was not unreasonable *per se.*   We cannot here
do better than quote at length from the opinion of the supreme
court after it had reached this conclusion:—

"The controversy which is contained in the merits of the
cause is resolvable into three questions:   First:   Does the act
of Congress impose upon the express company the duty of
making a receipt for a package tendered to it, and does it also
forbid the express company from requiring the shipper to
furnish the stamp to be affixed to the receipt, or of supplying
the means of paying the same?   Second:   If the act of Con-

gress does impose such duty on the express company, and does inhibit it from requiring that the shipper furnish the stamp or the means of paying it, does the act further forbid the express company from seeking to cast the burden on the shipper by an increase of rates? Third, and as a corollary of the second proposition: Does an increase of rate by an express company which is otherwise just and reasonable become unlawful, under the act of Congress, because such increase is made with the purpose of shifting the burden of the one-cent tax from its own shoulders to that of the shipper?

"The first proposition is unnecessary to be considered, since, even although it be conceded that the act of Congress imposes on the express company the duty of paying the one-cent stamp tax, this admission would not be at all decisive of the cause, unless also it be ascertained, under the second proposition, that the act of Congress also forbids the express company from shifting the burden of the tax by means of an increase of rates. And no necessity for passing on the first proposition arises from the mere fact that the decision of the second proposition requires a consideration of the provisions of the statute which it would be necessary to take into view if the first proposition was under consideration.

"It is also to be observed that the second and third propositions, which involve, the one the right to shift the burden of the tax by exacting that the one cent be provided, and the other the power to increase rates within the limits of the requirements that the charges as increased are reasonable, both depend upon the same considerations.

"Indeed, the question into which all the issues are ultimately resolvable is whether the right exists to shift the burden, of course ever circumscribed by the duty of not exceeding reasonable rates. If it does not,—that is, upon the hypothesis that it not only can be, but is, forbidden,—then it must result that all methods adopted to attain the prohibited result are void. On the contrary, if the right to seek to shift the burden obtains, then the substantial result of what is done becomes the criterion, and the mere fact that the motive, announced, for a reasonable increase of rates, is declared to be a shifting of the burden, cannot prevent the exercise of the lawful right. . . .

"Now, there is nothing in the provisions just quoted which,

by the widest conjecture, can be construed as expressly forbidding the person upon whom the taxes are cast from shifting the same by contract or by any other lawful means.''

The court then decides that, conceding (not determining) that the primary duty to pay the tax is cast upon the transportation company, it is a burden which may be shifted, and that a rate-charge otherwise not unreasonable will not as matter of law be held to be unreasonable when increased by the amount of the war-revenue tax; for so to hold would be to declare, against the language of the law, that the burden may not be shifted, and, further, it would be, in effect, but to hold that the act of Congress by the mere fact of imposing a stamp tax forbids all attempts to shift it, and, consequently, that the carrier is deprived by the law of the right to fix rates, even though the limit of reasonable rates be not transcended.

With this exposition of the law there can be no cavil, but it is to be remembered that the state of facts to which it applies is one where the express company's regular and reasonable rate, exacted of each and every shipper, includes the amount of the war tax, while in the case at bar it is admitted that the regular rate and charge of the company was tendered and refused. The supreme court of the United States found it unnecessary to decide, and therefore did not decide, whether primarily the duty to pay the tax is cast upon the carrier. Throughout its discussion it conceded that such was the law. If a decision upon this point had been necessary, we entertain no doubt that but one conclusion could have been reached,— that this duty is primarily upon the carrier. The language of the act seems to foreclose any controversy upon the matter: ''There shall be levied, collected, and paid, for and in respect of . . . documents . . . by any person or persons or party who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, . . . the several taxes,'' etc. (War Revenue Act, sec. 6.)  ''It shall be the duty of every . . . express company . . . to issue to the shipper . . . a bill of lading, . . . and there shall be duly attached . . . to each bill a stamp of the value of one cent.''  (War Revenue Act, sec. 25.)

In the Michigan case the express company shifted the burden by a reasonable change in its rate. In the present case, the question before the court may thus be put: May an

express company, to which has admittedly been tendered its regular charge for the transportation of a package, refuse to accept and transport that package upon its arbitrary demand that something more than the regular charge shall be paid? Here it is true that the exaction is small, amounting to only one cent, but, if the principle is good, it would apply equally well if the amount were large. Being an arbitrary demand of the company,—that is to say, a demand which it could waive at pleasure,—it would mean, if the principle contended for by appellant be upheld, that one shipper might receive the services of the express company upon payment of the regular charge, while others for the same service would be compelled to pay varying sums, arbitrarily exacted, in addition to the regular charge. So stated,—and we think the statement a fair one,—it will not need discussion to show that the principle is erroneous, and that this may not be done. Each and every shipper is entitled to the services of the company upon the payment of the regular charge for the same service.